UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAOHONG A/K/A SOPHIE QI, et al.,

                              Plaintiffs,

        -v-

KENNETH DINGLEDINE, et al.,

                              Defendants.

CIVIL ACTION NO. 23 Civ. 11094 (GHW) (RFT)

**OPINION & ORDER**

**INTRODUCTION**

On December 21, 2023, Plaintiffs Xiaohong a.k.a. Sophie Qi and Harmonia Holdings Ltd.

("Harmonia") (together, "Plaintiffs") sued Defendants Kenneth Dingledine, Yebo a.k.a. Boris

Cao, Barbara Darwall, Royo Holdings Ltd ("Royo"), Harmonia Holdings UK Ltd. ("HHUK"), and

BBK Theatricals Ltd ("BBK") (together, "Defendants"),[1] alleging claims of fraud, conversion,

breach of contract, tortious interference, theft of trade secrets, trademark infringement, and

unjust enrichment. (*See generally* ECF 1, Compl.) Plaintiffs' claims arise from Defendants'

alleged scheme to divert business away from Plaintiffs by establishing competing entities with

virtually identical names to Plaintiffs' entities, with the intent to deceive the theatrical

community. (*See id.* ¶ 1.) On October 25, 2024, Dingledine moved to compel arbitration of the

claims against him pursuant to the terms of his employment agreement and the Federal

Arbitration Act ("FAA") and to stay proceedings in this matter. (*See* ECF 49, Dingledine Mem. in

---

[1]        In addition to Defendants, Plaintiffs also assert claims against John Does 1 through 10
and ABC Companies 1 through 10. (*See* ECF 1, Compl.)

Support of Mot. To Compel Arbitration ("Mot.") at 1.) Pending before this Court is Dingledine's

fully briefed motion to compel arbitration and stay this case. This motion falls within the scope

of my reference. (*See* ECF 5, Order of Reference.) I have reviewed the parties' filings on the

docket. For the reasons set forth below, Dingledine's motion to compel arbitration is GRANTED

and this case is STAYED pending a decision on Plaintiffs' claims against Dingledine in

arbitration.[2]

## BACKGROUND

### I.      Factual Background

Dingledine served as President of Harmonia from April 2017 to December 2023. (*See*

ECF 1, Compl. ¶ 11; ECF 23, Answer ¶ 236.) Dingledine and Harmonia entered into an

employment agreement (the "Employment Agreement"), which set forth his terms of

employment and included provisions for mediation and arbitration of disputes. (*See* ECF 49-2,

Dingledine Mot. Ex. A, Employment Agreement.) The Employment Agreement is governed by

New York law. (*See id.* § 10.)

Section 9 of the Employment Agreement details a two-step dispute resolution process.

First, parties "shall mediate any claim or controversy arising out of or relating to" the

Employment Agreement. (*Id.* § 9(a).) It states that either Dingledine or Harmonia can request

mediation and give written notice to the other. (*See id.*) If the dispute is not resolved within five

---

[2]      Motions to compel arbitration are non-dispositive and therefore within a magistrate
judge's purview to "hear and determine" pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P.
72(a). *See Desarrolladora La Ribera v. Anderson*, No. 24-CV-0067 (LAK) (BCM), 2024 WL
5186600, at *1 n.1 (S.D.N.Y. Dec. 20, 2024); *see also Chen-Oster v. Goldman, Sachs & Co.*, 449 F.
Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases), *objections overruled*, 2021 WL 4199912
(S.D.N.Y. Sept. 15, 2021).

days of the mediation notice, the parties are required to use reasonable efforts to agree upon an independent mediator within ten days after the mediation notice. (*See id.*) If the parties fail to resolve the dispute by mediation, the Employment Agreement provides that the dispute shall be settled by binding arbitration. (*See id.* § 9(a)-(b).)

The Employment Agreement also contains a just cause termination provision that gives Harmonia the right to terminate Dingledine at any time for just cause. (*See id.* § 5(a).) In the case of such a termination, Harmonia will pay Dingledine through the date of separation and reimburse outstanding expenses. (*See id.*) The Employment Agreement also provides that Harmonia "shall have all other rights and remedies available under this or any other agreement and at law or in equity." (*Id.*)

Plaintiffs contend that they investigated Dingledine's actions during his tenure at Harmonia and its related entities, including Harmonia Theatrical Licensing LLC ("HTL"), Harmonia Spring Package LLC ("HSP"), and Broadway Licensing Global LLC ("BLG"), uncovering substantial mismanagement, including that he participated in undocumented financial transactions and co-mingled funds. (*See* ECF 56, Pls.' Opp. at 2-4.) As a result, Harmonia terminated Dingledine for cause in December 2023. (*See* ECF 23, Answer ¶ 236.) Dingledine was also removed from his positions as manager at HTL and as HTL's representative on BLG's board of managers. (*See* ECF 56, Pls.' Opp. at 3-5.)

Following his termination from Harmonia, Dingledine filed lawsuits against HTL's members in New York State Supreme Court on February 27, 2024, and against Qi and other defendants in Delaware Chancery Court on April 1, 2024 (the "Delaware Action"), challenging his removal and asserting claims related to his employment. (*See id.* at 5-6; ECF 56-5, Pls.' Opp.

Ex. D, New York Supreme Court Compl.; ECF 56-6, Pls.' Opp. Ex. E, Delaware Chancery Court

Compl.)

## II.    Procedural Background

Plaintiffs filed this suit against Dingledine on December 21, 2023. (*See* ECF 1, Compl.) On

January 14, 2024, Dingledine's attorney emailed Plaintiffs' counsel to raise the mediation and

arbitration provisions in the Employment Agreement and to provide notice of Dingledine's

intent to enforce them. (*See* ECF 49, Dingledine Mot. at 3; ECF 56, Pls.' Opp. at 2.) The parties

participated in an unsuccessful mediation on March 21, 2024. (*See* ECF 49, Dingledine Mot. at 3;

ECF 56, Pls.' Opp. at 2.)

This matter was referred to me on December 23, 2023, for general pretrial supervision

and dispositive motions. (*See* ECF 5, Order of Reference.)

Dingledine was served on December 29, 2023, and so his response to the Complaint was

due by January 19, 2024. (*See* ECF 8, Aff. of Service.) Because Dingledine failed to file a timely

response to the Complaint, on February 14, 2024, I ordered that Dingledine show cause why

default judgment should not be entered against him. (*See* ECF 10, Order.) On February 24,

2024, Dingledine requested an extension of time until April 2, 2024 to respond to the Complaint

because of the scheduled full-day mediation on March 21, 2024. (*See* ECF 12, Letter Mot.) I

granted the requested extension, which I later extended until May 5, 2024. (*See* ECF 13, Order;

ECF 16, Order.) When no answer was filed by that date, I ordered Dingledine to show cause by

May 21, 2024 why default judgement should not be entered against him. (*See* ECF 19, Order.)

On May 16, 2024, Dingledine filed his answer with counterclaims against Harmonia for failure

to pay wages and reimburse expenses, and against Qi for defamation; he also explained the

reason for the delay. (*See* ECF 23, Answer; ECF 26, Response to Order To Show Cause.) I discharged the Order To Show Cause on May 17, 2024. (*See* ECF 27, Mem. Endorsement.) Plaintiffs filed their answer to Dingledine's counterclaims on June 6, 2024. (*See* ECF 31, Counterclaim Answer.) I held a status conference on July 31, 2024. (*See* ECF 29, Order.) I scheduled a follow-up conference on August 20, 2024, which was rescheduled and held on September 25, 2024. (*See* ECF 34, Order; ECF 36, Order; ECF 42, Order.)

On October 25, 2024, Dingledine filed his motion to compel arbitration, seeking to enforce the arbitration provision in the Employment Agreement and stay the proceedings in this Court pending a resolution of his claims in arbitration. (*See* ECF 49, Dingledine Mot.) Plaintiffs filed their opposition to the motion on December 6, 2024, arguing, among other positions, that the just cause provision of the Employment Agreement takes Plaintiffs' claims against Dingledine outside the scope of the arbitration clause; that even if some of Dingledine's claims are subject to arbitration, others are not, and one of Dingledine's two counterclaims is not; and that Dingledine waived his right to arbitrate by delaying too long to move to compel arbitration. (*See* ECF 56, Pls.' Opp. at 1, 21.) Dingledine filed his reply on December 20, 2024, responding that carving out just cause termination would render the arbitration clause meaningless and that Dingledine did not waive his right to arbitrate. (*See* ECF 57, Dingledine Reply at 6-10.)

Between November 1, 2024 and May 12, 2025, the parties provided periodic updates on the status of discovery. (*See* ECF 52, 55, 58, 59, 61, 65, 66, 72, 78, 79, 81, 85, 87.) On February 27, 2025, Defendants sought a pre-motion discovery conference for an anticipated motion to quash, arguing that Plaintiffs had served overbroad and intrusive third-party subpoenas (*see*

ECF 63, Defs.' Letter-Mot.), which Plaintiffs opposed (*see* ECF 67, Pls.' Letter). On March 7,

2025, Defendants moved to compel production of certain documents by Plaintiffs (*see* ECF 68,

Defs.' Letter-Mot.), which Plaintiffs opposed (*see* ECF 70, Pls.' Letter). I declined to quash the

subpoenas and granted in part the motion to compel. (*See* ECF 71, Order.) On March 18, 2025,

Defendants moved to compel production of certain documents (*see* ECF 73, Defs.' Letter-Mot.),

and I granted Plaintiffs' request for additional time (*see* ECF 76, Pls.' Letter-Mot.; ECF 77,

Order). On April 16, 2025, I granted the motion to compel and set new discovery deadlines. (*See*

ECF 83, Order.)

On May 12, 2025, Defendants moved for an extension of the discovery deadline. (*See*

ECF 86, Defs.' Letter-Mot.) Plaintiffs responded that they had made a substantial document

production and had sent a deficiency letter to Defendants concerning Defendants' production.

(*See* ECF 87, Status Update.) Defendants countered with a letter asserting that there were large

gaps in Plaintiffs' production and that Plaintiffs' deficiency letter did not leave sufficient time

for compliance before the close of discovery. (*See* ECF 88, Defs.' Letter.)

## LEGAL STANDARDS

### I.    Contract Interpretation Is a Matter for the Court

Under New York law, the interpretation of a contract "is a matter of law for the court to

decide." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002).[3] The Court

must interpret unambiguous contractual provisions based on "their plain and ordinary

meaning," *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir.

---

[3]    Unless otherwise indicated, this opinion and order omits internal quotation marks,
emphases, and citations from quotations.

2011) (quoting *Essex Ins. Co. v. Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2d Dep't 2010)), interpreting such terms "in light of common speech and the reasonable expectations of a businessperson." *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003).

## II.    Arbitrability

The FAA governs any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. An arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Before a court may rule on the enforceability or scope of an arbitration agreement, it must determine the threshold issue of whether those questions are for the court or the arbitrator to decide. *See Reid v. Tandym Grp., LLC*, 697 F. Supp. 3d 62, 74 (S.D.N.Y. 2023). "The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). Courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits" and draw all reasonable inferences in favor of the non-moving party. *Id.* A court may compel arbitration only within the jurisdiction where the court is located. *See, e.g.*, *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003) (noting that "the Court's authority to compel arbitration under [9 U.S.C. § 4] is restricted to arbitration proceedings that occur within this District").

7

"The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002); *see also Friedman v. Sunrise Senior Living Mgmt., Inc.*, No. 23-CV-8901 (GHW) (GS), 2025 WL 958550, at *4 (S.D.N.Y. Mar. 31, 2025).

 "A court presented with a motion to compel arbitration must first establish that an arbitration agreement exists." *Reid*, 697 F. Supp. 3d at 74. This determination "is governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019). If a court finds that the parties entered into an arbitration agreement, it must then determine "whether the dispute at issue comes within the scope of the arbitration agreement." *Silver v. Nissan-Infiniti LT, LLC*, 724 F. Supp. 3d 217, 222 (S.D.N.Y. 2024) (quoting *ACE Cap. Re Overseas*, 307 F.3d at 28). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

Courts in this Circuit previously began the arbitrability analysis by classifying the arbitration clause as either broad or narrow. *See Keystone Food Holdings, Ltd. v. Tyson Foods, Inc.*, 492 F. Supp. 3d 134, 143-44 (S.D.N.Y. 2020). However, courts can no longer rely on broad arbitration clauses to presume arbitrability in the first instance, *see Silver*, 724 F. Supp. 3d at 222, because the Supreme Court's ruling in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010), abrogated prior Second Circuit caselaw directing courts first to identify the arbitration clause as broad or narrow and then to apply a presumption of

arbitrability if the clause was broad. *See Local Union 97 v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113-14 (2d Cir. 2023). Rather, courts must first turn to "ordinary principles of contract interpretation" to assess whether the "particular dispute is covered by the language to which the parties agreed." *Id.* at 114. As such, "the presumption of arbitrability is a court's last, rather than first, resort" and is invoked "only where the parties' dispute concerns a valid and enforceable agreement to arbitrate that is ambiguous as to its scope." *Id.* at 113-14; *see also Silver*, 724 F. Supp. 3d at 222.

### III.    Waiver

To determine whether a party has waived the right to arbitration, courts ask "whether a party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023). For decades, the Second Circuit assessed whether a party had waived its right to arbitrate by considering "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice*." La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). However, in *Morgan v. Sundance, Inc.*, the Supreme Court "[s]tripped" the prejudice requirement from the waiver inquiry in circuits where no comparable requirement is applied outside the arbitration context, reasoning that "a court may not devise novel rules to favor arbitration over litigation." 596 U.S. 411, 418-19 (2022).

Since *Morgan*, courts in this Circuit have disagreed on the appropriate framework for assessing whether a party has waived the right to arbitrate. *See, e.g.*, *Brevard v. Credit Suisse*, No. 23-CV-0428 (LJL), 2024 WL 36991, at *8 (S.D.N.Y. Jan. 3, 2024). Some cases have

interpreted *Morgan* as eliminating the prejudice requirement from the Second Circuit's arbitration-specific test but leaving the remaining factors intact. *See, e.g.*, *Desarrolladora La Ribera v. Anderson*, No. 24-CV-0067 (LAK) (BCM), 2024 WL 5186600, at *12 (S.D.N.Y. Dec. 20, 2024). Other decisions have held that courts should exclusively apply general contract-law principles to assess waiver. *See, e.g.*, *Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022). Some courts have opted to apply both tests. *See Lawrence v. NYC Med. Prac., P.C.*, No. 18-CV-8649 (GHW), 2023 WL 4706126, at *12-13 (S.D.N.Y. July 21, 2023). Others have recognized the similarities between the tests and applied a hybrid approach. *See Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 211-12 (S.D.N.Y. 2023).

## IV.    Stays of Court Proceedings Pending Arbitration

When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceedings pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration; rather the FAA compels the court to stay the proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").

"[I]f the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). In determining whether to stay proceedings, a court "must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue

resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." *Winter Invs., LLC v. Panzer*, No. 14-CV-6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015); *see also Moore v. Interacciones Glob., Inc.*, No. 94-CV-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) (holding that "claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants"). In such cases, "a stay is warranted in part because the prior litigation or arbitration is likely to have preclusive effect over some or all of the claims not subject to arbitration." *Winter Invs.*, 2015 WL 5052563, at *11. Ultimately, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco*, 815 F.2d at 856.

## DISCUSSION

I.    **The Just Cause Provision of the Employment Agreement**
      **Does Not Place Plaintiffs' Claims Against Dingledine**
      **Outside the Arbitration Clause of the Employment Agreement**

The Employment Agreement between Dingledine and Harmonia contains an arbitration clause, meaning that there is an arbitration agreement between Plaintiffs and Dingledine. The arbitration provision states:

> Any claim or controversy arising out of or relating to this Agreement, the parties' relationship, or any other matter or thing (except for the Company's right to obtain injunctive relief in a court of competent jurisdiction relative to any breach of Sections 6 or 7) shall be settled by binding arbitration if such claim or controversy is not settled pursuant to mediation as set forth above.

(ECF 49-2, Dingledine Mot. Ex. A, Employment Agreement § 9(b).)

The Employment Agreement also contains a just cause termination provision, which

provides:

> The Company shall have the right to terminate the Executive's employment
> agreement at any time for Just-Cause by giving the Executive written notice of the
> effective date of termination (which effective date may be the date of such
> notice.) The Company shall provide the Executive with payment for any accrued
> but unpaid wages through the date of separation and reimburse all outstanding
> expenses in the event of a Just-Cause Termination, payable on the next regularly
> scheduled paydate. If the Company terminates Executive's employment for Just-
> Cause, the Company shall have all other rights and remedies available under this
> or any other agreement and at law or in equity. Executive shall continue to be
> bound by the provisions of Sections 6 and 7 of this Agreement at all times.

(*Id.* § 5(a)(i).)

The arbitration clause is worded broadly, covering "*[a]ny* claim or controversy arising

out of or relating to [the] Agreement, the parties' relationship, or any other matter or

thing."(*Id.* § 9(b) (emphasis added)); *see Armor All/STP Prods. Co. v. TSI Prods., Inc.*, 337 F. Supp.

3d 156, 168 (D. Conn. 2018) (noting that a clause covering "any claim or controversy arising out

of or relating to the agreement" is a paradigm broad clause). The arbitration clause contains a

specific carveout for Harmonia's right to seek injunctive relief in the event of a breach of the

Employment Agreement's confidentiality provision and covenant against competition. (*See* ECF

49-2, Dingledine Mot. Ex. A, Employment Agreement § 9(b).) Aside from these exceptions,

there are no carveouts in the arbitration clause. Notably, the provision is sweeping,

encompassing not only disputes that arise out of the Employment Agreement, but also disputes

arising out of "the parties' relationship, or any other matter or thing." *Id.* These catch-all

phrases indicate that the clause is to be construed expansively and manifests the parties' intent to arbitrate issues that extend beyond the specific provisions of the Employment Agreement. [4]

Plaintiffs argue that the Court should deny the motion to compel arbitration, contending that the just cause termination provision reserves all of Harmonia's rights and remedies "at law or in equity," which includes Harmonia's right to litigate in federal court. (*See* ECF 56, Pls.' Opp. at 9-10.) They contend that Dingledine was terminated for just cause pursuant to this clause, so that Harmonia is contractually entitled to litigate matters relating to his termination in federal court. (*See id.*)

I find this argument is unpersuasive given the broad language of the arbitration clause. "The cardinal principle for the construction and interpretation . . . [of] all contracts – is that the intentions of the parties should control." *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006). The extremely broad arbitration clause reflects the parties' intent to arbitrate disputes arising from the Employment Agreement, the parties' relationship, and other matters. Where the parties intended to create exceptions to the otherwise broad arbitration clause or provide additional remedies beyond an arbitrator's power, the Employment Agreement contains explicit carveouts. Plaintiffs ask the Court to read an additional exception into the arbitration clause for terminations for just cause. The plain language of the Employment Agreement provides no basis for doing so. Thus, the Employment Agreement mandates that Plaintiffs' claims against Dingledine be submitted to arbitration.

---

[4]    While the broad language of the arbitration agreement could be interpreted to suggest that the parties intended to submit questions of arbitrability to the arbitrator, *see, e.g., Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 118, 120-23 (2d Cir. 2003), Dingledine does not raise this argument.

Furthermore, while the just cause termination clause reserves Harmonia's rights and remedies "at law or in equity," the federal courts are not the only venue for pursuing such relief. "Where an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009). Harmonia can obtain the relief it is seeking "at law or in equity" through arbitration. Courts have consistently upheld "a wide range of damages awarded by arbitrators, including attorneys' and arbitrator's fees, expectancy damages, and even damages that purportedly violated a limitation-on-damages provision in the relevant agreement." *Caremark, L.L.C. v. N.Y. Cancer & Blood Specialists*, 740 F. Supp. 3d 340, 353 (S.D.N.Y. 2024). An arbitrator can award an adequate remedy at law, such as an award of money damages. *See AKF Inc. v. Skybell Techs. Inc.*, No. 24-CV-2271 (LTS), 2025 WL 896905, at *1, *8 (S.D.N.Y. Mar. 24, 2025) (granting petition to confirm prior arbitration award of $360,540.08, and denying respondents' motion to vacate the same award). And "arbitrators are empowered to fashion awards to achieve just results and may shape . . . remedies with a flexibility at least as unrestrained as that employed by a chancellor in equity." *Nicoletti v. E.F. Hutton & Co.*, 761 F. Supp. 312, 315 (S.D.N.Y. 1991) (quoting *Rosenblum v. Aetna Cas. & Sur. Co.*, 439 N.Y.S.2d 482, 483 (3d Dep't 1981)). Arbitrators have traditional powers of equity, and "[u]nder New York law [they also] have power to fashion relief that a court might not properly grant." *Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301, 306 (2d Cir. 1982); *see also S. Seas Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mex. City*, 606 F. Supp. 692, 693, 695 (S.D.N.Y. 1985) (affirming the arbitration panel's conclusion that "[c]ase law, however, supports our authority

as arbitrators to engage in equitable type relief"). Accordingly, the just cause termination provision is not in any way inconsistent with compelling arbitration in this matter.

Plaintiffs take the fallback position that several of their claims (for false endorsement and false advertising in violation of the Lanham Act and for conversion) as well as Dingledine's defamation counterclaim should not be arbitrated because those claims fall outside the scope of the Employment Agreement. (*See* ECF 56, Pls.' Opp. at 19-21.) This argument fails to acknowledge that the arbitration clause extends beyond disputes arising out of the Employment Agreement and encompasses claims relating to "the parties' relationship" or "any other matter or thing." (ECF 49-2, Dingledine Mot. Ex. A, Employment Agreement § 9(b).)

Plaintiffs argue Harmonia's Lanham Act claims against Dingledine are not related to the Employment Agreement, and thus "Counts Six and Seven of the Complaint are nonarbitrable." (ECF 56, Pls.' Opp. at 20.) Plaintiffs' argument on count seven is inapplicable because that cause of action is brought against Cao and Darwall only, not against Dingledine. (*See* ECF 1, Compl. ¶¶ 131-36.) Count six alleges that Defendants intentionally misrepresented that Harmonia was connected to HHUK, which constituted false endorsement and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A). (*See id.* ¶¶ 126-27.) This claim arises out of "the parties' relationship" because Dingledine was able to make the alleged misrepresentations and create confusion in part because of his employment with Harmonia. While Plaintiffs argue that the Lanham Act claims against Dingledine are no different from such claims against "others who infringe [Plaintiffs'] marks" (ECF 56, Pls.' Opp. at 20), Dingledine, unlike ordinary infringers, was uniquely positioned to misappropriate the Harmonia trade name based on his relationship with Plaintiffs and his position at Harmonia.

15

The basis for Plaintiffs' conversion claim is that Dingledine "funneled funds from Harmonia's bank account, to the exclusion of Harmonia, to fund [Defendants'] production expenses, travel and personal expenses." (ECF 1, Compl. ¶¶ 151-53.)[5] The claim that Dingledine converted funds from Harmonia's bank account is subject to arbitration, because the alleged conversion took place during Dingledine's employment at Harmonia and was facilitated by Dingledine's position at Harmonia. Additionally, the alleged conversion arguably implicates the employment and duties clause of the Employment Agreement, which prohibited Dingledine from "acquir[ing], assum[ing], or participat[ing] in, directly or indirectly, . . . any position, investment, or interest adverse or antagonistic to [Harmonia]." (ECF 49-2, Dingledine Mot. Ex. A, Employment Agreement § 2(b).)

Dingledine's defamation counterclaim is based on allegations that Qi made statements about Dingledine being a thief and incompetent manager to Dingledine's colleagues and leaders in the theatre industry while Dingledine was still employed by Harmonia. (*See* ECF 23, Answer ¶¶ 210-19, 241-45.) Even if some of Qi's allegedly defamatory statements were made after Dingledine's termination, as Plaintiffs argue (*see* ECF 56, Pl. Opp. at 21), those statements are still closely tied to Dingledine's actions during his employment. The counterclaim thus arises out of the parties' relationship, and as such it is arbitrable.

---

[5]    Plaintiffs also argue that Dingledine's act of transferring Harmonia's rights into HSP constituted conversion (*see* ECF 56, Pls.' Opp. at 20-21), but Plaintiffs do not make this claim in the Complaint. (*See* ECF 1, Compl. ¶¶ 151-53 (alleging under the cause of action for conversion that Dingledine funneled funds from Harmonia's bank account to fund their production expenses, travel and personal expenses, and unauthorized productions).)

II.    **Dingledine Did Not Waive His Right to Arbitration**

    A.    <u>The New Second Circuit Test</u>

    Post-*Morgan*, courts applying the amended waiver test focus on two factors: (1) "the time elapsed from when litigation was commenced until the request for arbitration," and (2) "the amount of litigation to date, including motion practice and discovery." *Desarrolladora*, 2024 WL 5186600, at *12; *Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 528 & n.6 (S.D.N.Y. 2024). For the reasons set forth below, I conclude that there has been no waiver under the new Second Circuit test.

    1.    Time Elapsed

    Plaintiffs argue that Dingledine waited for more than 10 months before submitting the motion to compel arbitration. (*See* ECF 56, Pls.' Opp. at 16.) While the time elapsed weighs slightly in favor of finding a waiver, this alone is not dispositive. Courts have found that longer delays did not constitute a waiver. *See, e.g.*, *Fasano v. Li*, No. 16-CV-8759 (KPF), 2023 WL 6292579, at *10 (S.D.N.Y. Sept. 27, 2023) (rejecting the waiver argument, even though six years had passed before the defendants moved to compel arbitration, because during those years there was "almost no litigation on the merits . . . and the parties . . . engaged in virtually no discovery"); *Herrera v. Manna 2nd Ave. LLC*, No. 20-CV-11026 (GHW), 2022 WL 2819072, at *9-10 (S.D.N.Y. July 18, 2022) (rejecting the waiver argument where more than one year had elapsed before the defendants sought leave to move to compel arbitration, but motion practice during that period "dealt primarily with procedural, non-substantive issues" and no "substantial discovery" had occurred).

As Dingledine correctly points out, the Employment Agreement's arbitration clause requires parties to first engage in mediation before they can initiate arbitration. Here, the parties conducted a full-day mediation on March 21, 2024. (ECF 56, Pls.' Opp. at 2, 13.) As claims or controversies "shall be settled by binding arbitration if such claim or controversy is not settled pursuant to mediation," this process alone delays the date from which defendant can initiate arbitration. (ECF 49-2, Dingledine Mot. Ex. A, Employment Agreement § 9(b).) Taking this limitation into account, Defendant waited for seven months before filing the motion to compel arbitration on October 25, 2024. (*See* ECF 49, Def. Mot.) Courts have found there to be no waiver after even longer times. *See, e.g.*, *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (refusing to find waiver after an almost two-year delay where there was "no evidence of extensive discovery or substantive motions" in the interim); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (finding no waiver even though defendant did not move to compel arbitration for three years, where "matters of estate administration, as well as a dispute over whether the trustee's counsel had a conflict of interest, contributed to and basically accounted for the three-year delay"). While the time elapsed slightly favors the Plaintiff, this factor must be weighed against the amount of litigation to date.

### 2. Amount of Litigation to Date

Assessing the litigation to date is designed to prevent litigants from "us[ing] arbitration as a means of aborting a suit that did not proceed as planned in the District Court." *La. Stadium*, 626 F.3d at 161. In assessing the amount of litigation, courts consider "any motion practice engaged in by the parties and the extent of discovery the parties have exchanged." *Pierre v.*

*Rochdale Vill. Inc.*, No. 18-CV-6383 (MKB) (ST), 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020)

(collecting cases); *see also Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*, No. 15-CV-7543 (NSR),

2019 WL 13181378, at *3 (S.D.N.Y. June 25, 2019) ("The amount of litigation includes motion

practice and discovery."); *Herko v. Metro. Life Ins. Co.*, 978 F. Supp. 141, 148 (W.D.N.Y. 1997)

(finding that the defendant had not waived its right to compel arbitration where some

discovery had occurred after the defendant moved to compel but where "neither side ha[d]

engaged in . . . protracted litigation with the potential for substantial amounts of wasted legal

costs").

The amount of litigation to date weighs against a finding of waiver. As to substantive

litigation activity, Dingledine answered the Complaint and asserted counterclaims against

Plaintiffs. (*See* ECF 23, Answer.) However, there has been no merits-related motion practice

beyond the motion to compel arbitration. This motion, standing alone, is insufficient to support

a finding of waiver. *See In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294

(S.D.N.Y. 2021) (finding no waiver in part because the proceedings primarily involved

consolidation, a motion to dismiss, and a motion to compel arbitration).

With regard to discovery, prior to the motion to compel arbitration, Plaintiffs had served

their Disclosure Statement pursuant to Rule 7.1 and made their Rule 26 initial disclosures. (*See*

ECF 30, Corporate Disclosure Statement.) Plaintiffs had also entered a Joint Case Management

Plan setting forth the parties' expectations for discovery after a Rule 26(f) Conference. (*See* ECF

46, Case Management Plan.) However, these filings are a standard and early part of the

litigation process and do not reflect a waiver by Dingledine. *See Boustead Sec., LLC v. Leaping

Grp. Co.*, 656 F. Supp. 3d 447, 449-50 (S.D.N.Y. 2023) (granting motion to compel arbitration

where the parties had exchanged Rule 26(a) initial disclosures but had not engaged in discovery).

Plaintiffs argue that before the motion to compel arbitration, they had propounded discovery demands on all Defendants and that Dingledine had responded with discovery demands of Plaintiffs. (*See* ECF 56, Pls.' Opp. at 14.)  However, demands for discovery alone are not enough, especially in this case, where no documents had been produced before Dingledine moved to compel. *See Herrera*, 2022 WL 2819072, at *10 (finding that this element weighted against waiver where there was minimal discovery before the motion to compel); *Katsoris*, 237 F. Supp. 3d at 103 (finding that the extent of litigation did not weigh in favor waiver because, although the parties had "briefed outstanding motions, they ha[d] not conducted any discovery"); *see also Thyssen*, 310 F.3d at 105 ("This Circuit has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery."); *Boustead Sec.*, 656 F. Supp. 3d at 452 (collecting cases). To find a waiver, there would need to have been significantly more litigation activity before Dingledine moved to compel arbitration. *See Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (finding waiver where the party asserting waiver had, before the motion to compel arbitration, defended two substantive motions to dismiss, been ordered to produce a key witness for deposition, complied with an extensive document request, and participated in extended discovery disputes).

Most of the points raised by Plaintiffs do not significantly bear on the amount of litigation to date. For example, Plaintiffs note that the parties participated in two separate full-day mediations. (*See* ECF 56, Pls.' Opp. at 13.) However, mediation is a required step under the

arbitration clause. *Cf. HHF2020 LLC v. Trumbull-Nelson Constr. Co., Inc.*, No. 22-CV-0054, 2022 WL 2752582, at *3 (D. Vt. July 14, 2022) (ordering the parties to mediate and arbitrate pursuant to the contract between them). Plaintiffs note that they have engaged in protracted settlement negotiations involving Dingledine and HSP as well as with Royo and Darwall and that Dingledine negotiated a settlement in the Delaware Action. (*See* ECF 56, Pls.' Opp. at 13-14.) However, courts typically focus on motion practice and discovery rather than settlement efforts in evaluating the amount of litigation that has taken place. *See Cimillo v. Experian Info. Sols., Inc.*, No. 21-CV-9132 (VB), 2023 WL 2473403, at *10 (S.D.N.Y. Mar. 13, 2023) (analyzing the amount of litigation and noting that "filing answers, appearing at mandatory court conferences, and engaging in mediation and settlement do not establish waiver"). Finally, Plaintiffs highlight their efforts to serve Cao, who evaded service in China, and their settlement discussions with Royo and Darwall. (*See* ECF 56, Pls.' Opp. at 13.)[6] However, those efforts are largely unrelated to the litigation against Dingledine. *See e.g.*, *Schreiber v. Friedman*, No. 15-CV-6861 (CBA) (JO), 2017 WL 5564114, at *12-13, *18-19 (E.D.N.Y. Mar. 31, 2017) (concluding that while one co-defendant had waived his right to compel arbitration by participating in extensive proceedings before the magistrate judge, other defendants had not).

This case is similar to *Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, where the Court concluded that there had not been a waiver of arbitration. No. 21-CV-7603 (VSB), 2023 WL 5769498, at *1 (S.D.N.Y. Sept. 6, 2023). In *Poletti*, the litigation commenced almost exactly one year before the defendants moved to compel arbitration, and while the Court acknowledged

---

[6]    Cao has since been voluntarily dismissed from the case. (*See* ECF 90, 91.)

that "a one-year delay is not prompt," the Court noted that "courts have granted motions to compel arbitration following similar delays." *Id.* at *4 (collecting cases). As to the amount of litigation, discovery had not yet begun, and the defendants' prior motion practice was limited to a motion to dismiss and the motion to compel arbitration. *See id.* Here, as in *Poletti*, "it cannot be said that this matter has involved substantial motion practice." *Id.*; *see also Flores*, 658 F. Supp. 3d at 211-12 (finding that the defendants' failure to raise arbitration "for nearly eight months after their opening brief was filed (and then only when prompted by the Court) does not waive their right to enforce the delegation clause when no other substantive litigation has occurred").

Plaintiffs rely on *S & R Co. of Kingston v. Latona Trucking, Inc.*, where the party seeking arbitration failed to plead the defense of arbitration despite asserting other defenses and counterclaims. *See* 159 F.3d 80, 83-85 (2d Cir. 1998). However, *S & R Co. of Kingston* is different from this case based on the amount-of-litigation factor. There, the party seeking arbitration had engaged in extensive discovery and had "benefitted by obtaining discovery on the arbitrable claims that would not have been available in arbitration." *Id.* at 84. By contrast, the parties did not exchange substantive discovery before Dingledine filed the motion to compel arbitration, and neither party has argued that there has been an exchange of material that would have been unavailable through the arbitration process.

B.    The Contractual Waiver Test

For the reasons set forth below, I also conclude that there has been no waiver under New York's contractual waiver test.

Under New York contract law, waiver requires "a clear manifestation of an intent . . . to relinquish [a] known right." *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006). "[T]he burden of proof is on the person claiming the waiver of the right." *200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F. Supp. 1237, 1251 (S.D.N.Y.), *aff'd*, 978 F.2d 706 (2d Cir. 1992). "Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." *Coggins v. County of Nassau*, 615 F. Supp. 2d 11, 30 (E.D.N.Y. 2009).

I am mindful that "waiver [of arbitration] is not to be lightly inferred." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). "Mere silence, oversight or thoughtlessness [in failing to object] is insufficient to support an inference of waiver." *Flores*, 658 F. Supp. 3d at 212. "While such a waiver may be express or implied, the intent to waive must be clearly established and cannot be inferred from doubtful or equivocal acts or language . . . ." *Lockheed Martin Transp. Sec. Sols. v. MTA Cap. Constr. Co.*, No. 09-CV-4077 (PGG), 2014 WL 12560686, at *22 (S.D.N.Y. Sept. 16, 2014). Waiver may be proved by "undisputed acts or language so inconsistent with [the party's] purpose to stand upon his [or her] rights as to leave no opportunity for a reasonable inference to the contrary." *Gramercy Holdings I, LLC v. Matec S.R.L.*, No. 20-CV-3937 (JPC), 2023 WL 5917624, at *44 (S.D.N.Y. Sept. 11, 2023) (quoting *Alsens Am. Portland Cement Works v. Degnon Contracting Co.*, 222 N.Y. 34, 37 (1917)).

Plaintiffs have not met this high burden. Plaintiffs emphasize that Dingledine "acquiesced for 10 months before filing the instant motion" and only did so at the Court's request. (ECF 56, Pls.' Opp. at 12-13.) This delay does not constitute a clear manifestation of intent to relinquish a contractual protection. *See Rsch. Frontiers Inc. v. Prelco Inc.*, No. 18-CV-

2939 (ST), 2020 WL 6746730, at *5 (E.D.N.Y. Nov. 17, 2020) ("A [contractual] [w]aiver cannot be created by negligence, oversight, or thoughtlessness; instead, it must be proved that a party intentionally or voluntarily waived a contractual right or advantage.").

At most, Plaintiffs argue that Dingledine should have brought their motion to compel arbitration sooner. However, the delayed timing of the motion, without more, is insufficient to demonstrate that Dingledine intended to waive his right to arbitrate, especially in light of the ongoing settlement negotiations in March. *See In re Generali*, 577 F. Supp. 3d at 294 (refusing to find waiver after a one-year delay in seeking arbitration).

In addition to the timing, Plaintiffs highlight their significant litigation efforts to date. However, as noted above, aside from the motion to compel arbitration, there has been no substantive litigation activity beyond Dingledine's filing his Answer with counterclaims and Plaintiffs' filing their Answer to the counterclaims. *See De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-CV-6305 (MKB) (TAM), 2022 WL 3097883, at *8-10 (E.D.N.Y. Aug. 4, 2022) (rejecting the waiver argument where the defendants waited eight months before moving to compel arbitration, in the meantime answering the complaint and engaging in document discovery but taking no depositions).

Nor does Dingledine's failure to plead arbitration as an affirmative defense constitute waiver. *See Pierre*, 2020 WL 6799635, at *7 n.8 (collecting cases where inadequately pleaded arbitration as affirmative defense failed to support a claim of waiver of arbitration); *Rush*, 779 F.2d at 889 ("Nor does defendants' service of an answer that contained thirteen affirmative defenses but failed to raise the agreement to arbitrate, constitute a waiver of arbitration.").

Plaintiffs cite *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, where the Second Circuit found waiver after seven months had passed following the case's removal to federal court before the party sought to enforce the contractual arbitration clause. *See* 67 F.3d 20, 22 (2d Cir. 1995). However, Plaintiffs overlook key factors that contributed to the Court's decision – notably that the party seeking arbitration in *Leadertex* waited until "the eleventh hour, with trial imminent," to act. *Id.* at 26. In contrast, the parties here were far from trial when Dingledine moved to compel.

Plaintiffs also cite *Madorskaya v. Frontline Asset Strategies, LLC*, where the court found that the defendant had waived the right to arbitration, noting that the defendant's answer raised seventeen affirmative defenses without referencing arbitration. No. 19-CV-0895 (PKC) (RER), 2021 WL 3884177, at *14 (E.D.N.Y. Aug. 31, 2021). However, the party there waited nearly twenty months to move to compel arbitration, and the parties had made significantly more progress in litigating the case: in *Madorskaya*, the court had decided a motion to dismiss, the parties had conducted depositions, and the defendant did not move to compel arbitration until near the close of discovery. *See id.*

### III.  Stay

Pursuant to the FAA, if a matter is arbitrable, a stay of the litigation is entered pending completion of the arbitration. *See* 9 U.S.C. § 3. Issues not subject to arbitration may be stayed "pursuant to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 468 (E.D.N.Y. 2009) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997)). "A discretionary stay is particularly appropriate where there is

significant factual overlap between the remaining claims and the arbitrated claims." *Winter Invs.*, 2015 WL 5052563, at *11. In this case, all Plaintiffs' claims against Dingledine and Dingledine's counterclaims are arbitrable, so a broad stay order is appropriate. A stay will "preserve both judicial and party resources, guard against duplicative discovery . . . and avoid[ ] possible inconsistent results." *Desarrolladora*, 2024 WL 5186600, at *25 (staying the defendant's counterclaim under New York's anti-SLAPP statute pending the arbitration of similar claims).

Plaintiffs point out that there are other Defendants with whom they have not agreed to arbitrate any claims, because those Defendants are not parties to the Employment Agreement. (*See* ECF 56, Pls.' Opp. at 19, 21.) However, there is significant factual overlap between the claims against Dingledine and the claims against the other Defendants. Decisions in the arbitration between Plaintiffs and Dingledine are "likely to have preclusive effect over some or all of the claims not subject to arbitration." *Winter Invs.*, 2015 WL 5052563, at *11. Consequently, the entire case should be stayed pending completion of the arbitration between Plaintiffs and Dingledine. *See Moore*, 1995 WL 33650, at *7 (holding that "claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants").

## CONCLUSION

For the foregoing reasons, Dingledine's motion to compel arbitration is **GRANTED**, with such arbitration to take place within this District. This matter is **STAYED** until resolution of Plaintiffs' claims against Dingledine in arbitration. Plaintiffs and Dingledine shall file on the

docket a joint update on the status of the arbitration on the first business day of every month, beginning on July 1, 2025, until the stay is lifted. The request for an extension of time to extend discovery is **DENIED as moot**, without prejudice to renewal once the stay is lifted. The Clerk of Court is respectfully requested to terminate **ECF 48 and ECF 86**.

DATED:     June 6, 2025
           New York, New York

SO ORDERED.

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**